UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TERRY HAROLD, Individually and on behalf of her minor child, LETORIA HAROLD | ) ) ) ) | |
| Plaintiff, | ) ) | CASE NO. |
| v. | ) ) | |
| PFIZER, INC. | ) ) | |
| Defendant. | ) | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Terry Harold, on behalf of herself individually, and on behalf of her minor child, Letoria Harold, hereby sues the defendant, Pfizer, Inc, by and through her undersigned attorneys. For her complaint, Plaintiff alleges and states the following:

**STATEMENT OF THE CASE**

1.     This is an action brought by Terry Harold (herein referred to as "Plaintiff") for personal injuries sustained by her daughter Letoria Harold who was born with birth defects and caused by the ingestion of Pfizer's drug Zoloft by his mother, Terry Harold, during her pregnancy. The injuries Plaintiff's daughter suffered followed his mother's ingestion of Zoloft, as well as the injuries suffered by Plaintiff individually, are the direct and proximate result of the wrongful conduct of the Defendant, Pfizer, Inc., in connection with the designing, developing,

manufacturing, distributing, labeling, advertising, marketing, promoting, and selling of the widely-used anti-depressant drug, Zoloft.

## PARTIES AND JURISDICTION

2. Made defendants herein are:

    Pfizer, Inc, a foreign corporation authorized to do and doing business with the State of Louisiana who may be served through its agent for service of process, CT Corporation System, 5615 Corporate Boulevard Suite 400B, Baton Rouge, LA 70808.

3. Plaintiff, Letoria Harold, is a minor child born on February 16, 1998 and a citizen of Louisiana, residing with his mother, Terry Harold. Letoria Harold is represented in this action by her mother, Terry Harold.

4. Terry Harold is a competent adult and the parent of the minor plaintiff Letoria Harold, residing in Tangipahoa Parish, Louisiana. She brings this action individually and on behalf of her minor daughter to recover medical and other expenses incurred in treatment and attempting to cure her daughter's birth defects, general and special damages, and loss of consortium and loss of society.

5. Terry Harold did not discover her daughter's injuries were caused by her use of Zoloft

until within one (1) year prior to filing this lawsuit, although the injuries occurred many years prior thereto. In addition, defendants concealed information from the plaintiff that would have alerted plaintiff to their cause of action.

6. This is an action to recover damages for personal injuries suffered by Plaintiffs as a direct and proximate result of Defendants' negligent and wrongful conduct in connection with the design, research, development, testing, inspecting, producing, manufacturing, analyzing, merchandising, packaging, advertising, promoting, labeling, distribution, marketing and sale of Zoloft.

7. At all times material hereto, Zoloft was designed, researched, developed, tested, inspected, produced, manufactured, analyzed, merchandised, packaged, advertised, promoted, labeled, distributed, marketed, and sold by the Defendant herein.

**JURISDICTION**

8. This Honorable Court has jurisdiction over the claims of the above named parties pursuant to 28 U.S.C. § 1332, diversity jurisdiction and the amount in controversy exceeds $75,000 exclusive of interests and costs.

9. At all relevant times, Defendant was present and doing business in the State of Louisiana and in the Eastern District of Louisiana. Defendant transacted, solicited, and conducted business

in the State of Louisiana and derived substantial revenue from such business.

10.     Defendant violated within this jurisdiction various statues and regulations of the State of Louisiana, including the Louisiana Products Liability Act and applicable business and consumer protection regulations.

11.     As a direct and proximate result of the Defendant placing Zoloft into the stream of commerce, Plaintiffs have suffered injuries including, without limitations, past and future physical, mental and economic loss, pain and suffering, and other injuries either known or unknown at this time.

## FACTUAL ALLEGATIONS

12.     Zoloft is a selective serotonin reuptake inhibitor (SSRI) marketed, primarily, as an antidepressant medication. Zoloft is also used to treat obsessive-compulsive disorder, panic attacks, posttraumatic stress disorder, and social anxiety disorders. SSRIs work by increasing the amount of serotonin, a natural substance in the brain that helps maintain mental balance.

13.     Pfizer designed, manufactures and markets the drug Zoloft. Zoloft (NDA 019839) was approved by the FDA on December 30, 1991 and is one of the oldest SSRIs available. Its chemical name is sertraline hydrochloride.

14. In 2005, Zoloft was the most prescribed antidepressant drug on the US retail market with almost 27 million prescriptions dispensed. In 2005, Zoloft's sales totaled $3.3 billion.

15. On June 23, 2006, Zoloft's patent expired and the drug became available in generic form, known as sertraline.

16. Terry Harold took Zoloft as prescribed by her treating physician(s) and/or health care providers for its intended purpose while pregnant with Letoria Harold and never warned of its effects when ingested by pregnant women.

17. As a direct and proximate result of Terry Harold's use of Zoloft, when Letoria Harold was born on February 16, 1998, he suffered, and continues to suffer from, respiratory and heart problems. Plaintiff may suffer in the future from other diseases or conditions which have not yet been diagnosed.

18. The injuries, defects, and malformations suffered by Letoria Harold were a direct result of Terry Harold's ingestion of Zoloft during her pregnancy in a manner and dosage recommended and prescribed by her physician(s) and/or health care providers.

19. Prior to Terry Harold becoming pregnant with Letoria Harold Defendant knew or should have known that children were being born with congenital injuries, defects, disorders, and malformations to women who took Zoloft during pregnancy.

20. Prior to Terry Harold becoming pregnant with Letoria Harold, Defendant knew or should have known that Zoloft crosses the placenta, which could have important implications for the developing fetus.

21. During the time that Terry Harold ingested Zoloft during her pregnancy with Letoria Harold, Defendant knew or should have known that Zoloft posed an increased risk of congenital injuries, defects, disorders, and malformations.

22. Defendants' Zoloft can cause serious birth defects when ingested during pregnancy. These defects include, but are not limited to, ventricular septal defects, atrial septal defects, hypoplastic left or right heart syndrome, aortic and ventricular outflow tract obstruction defects, craniosynostosis, omphalocele, gastroschisis, persistent pulmonary hypertension of the newborn (PPHN), Tetralogy of Fallot, pulmonary atresia, limb deformations, spina bifida, cleft palate, and patent ductus arteriosus.

23. Pfizer knew or should have known about these adverse side effects as early as 1991, but failed to adequately warn the consumer public, physicians and the Food and Drug Administration (FDA) of these life threatening birth defects.

24. Prior to initial approval, Pfizer's preclinical animal studies demonstrated significant harm to fetuses when Zoloft was administered during pregnancy, including increased mortality and cardiac malformations.

25. Pfizer did not test Zoloft for safety or efficacy in pregnant women. In its promotional activities, however, Pfizer did not discourage the use of Zoloft in pregnant women. In fact, through a variety of methods, Pfizer actually encouraged doctors to prescribe Zoloft to women of child bearing age, women who were trying to conceive and even to pregnant women.

26. In September 2005, the manufacturers of the SSRI drug Paxil, a drug very similar to Zoloft, added language to the drug's label warning doctors and patients of cardiac malformations and other structural birth defects when Paxil was ingested during pregnancy. Pfizer was on actual or constructive notice of the potential teratogenic effects of Zoloft at this time.

27. Further, many observational studies have been conducted showing a statistically significant increase in birth defects associated with the use of Zoloft.

28. As published in 2006 in the *New England Journal of Medicine*, scientists found a direct correlation between the increased risk in babies born with Persistent Pulmonary Hypertension of the Newborn (PPHN) and the use of SSRIs, including Zoloft. This study found that pregnant women who took Zoloft after the 20th week of pregnancy were six times more likely to have babies with PPHN than infants born to mothers who did not take SSRIs during pregnancy.

29. In June 2007, a study was published in the *New England Journal of Medicine* showing a hazard ratio of 1.5 (.9-2.6) for cardiac defects. This indicates that the risk of cardiac defects in the

babies whose mothers ingested Zoloft during pregnancy was 50 percent higher than in the babies whose mothers did not.

30.     Another study published in June 2007 in the *New England Journal of Medicine* showed a statistically significant hazard ratio of 2.0 (1.2-4.0) for septal defects, such as ASD and VSD. This indicates that the risk of septal defects in the babies whose mothers ingested Zoloft during pregnancy was twice as high as these defects in babies whose mothers did not. This same study also indicated a doubling in the risk for right ventricular outflow tract obstruction defects (hazard ratio of 2.0) and left ventricular outflow tract obstruction defects (hazard ratio of 1.9) in mother treated with Zoloft during pregnancy.

31.     Additional studies were published in 2007 and later that examined birth defects that occurred when mothers ingested Zoloft during pregnancy. These included a statistically significant almost six-fold risk of a baby being born with omphalocele (a condition where the newborn's intestine or abdominal organs are protruding from the abdomen) and an 80 percent incase in risk of a baby being born with craniosynstosis (a condition where the skull bones and plates fuse earlier than normal resulting in increased pressure inside the skull) when a mother ingested Zoloft during her pregnancy.

32.     In September 2009, the *British Medical Journal* published a population based cohort study that had over 493,000 patients. This study found that Zoloft carried an increased risk for congenital heart defects with a statistically significant odds ratio of 3.25 (1.21-8.75) indicating

that the risk of babies born to mothers on Zoloft had more than a tripling of the risk of having a heart defect. This same study also revealed a doubling of the risk of major malformations of the infant, including cranial malformations, when mothers were exposed to sertraline during pregnancy (OR 1.51, 95% CI = 0.84-2.69).

33. The current Zoloft label *still* does not warn doctors or patients about the increased risk of cardiac malformations and other birth defects seen in babies whose mothers ingested Zoloft.

34. To date, Defendant has failed to adequately warn or inform consumers, such as Plaintiff's prescribing physician, of the known effects in Zoloft that can lead to cardiac malformations and other birth defects, they fraudulently concealed these effects and made misrepresentations to the damage and detriment of Plaintiffs.

35. Many of the studies conducted by Defendant failed to demonstrate efficacy for Zoloft in treating adults, children, and adolescents and revealed significant and serious side effects. Defendant sought to limit health care providers' access to this negative data and promote only the most favorable aspects of the data from this studies. Defendant took actions to suppress and conceal negative information concerning the drug and to consciously misrepresent the data it did reveal concerning the drug's efficacy and safety. These actions by Defendant include, but are not limited to "Ghostwriting" letters and articles for the signature of key opinion leaders to be placed in respected medical journals, suppressing information about Zoloft's adverse effects, promoting positive study outcomes while avoiding negative ones, and communicating marketing message

designed to get health care providers to prescribe Zoloft.

36.     In fact, in 2005 the United States Food and Drug Administration (FDA) issued a warning letter to Pfizer citing it for omitting risk information about Zoloft and for placing advertisements that are false and misleading into the public. The FDA stated "This ad is concerning from a public health perspective because it fails to include a serious risk associated with the drug."

37.     The FDA also makes it illegal to receive, introduce, or deliver for introduction into interstate commerce any drug that is "misbranded". 21 U.S.C. § 331(a)-(c).

    1) A drug is misbranded if any one of several circumstances exists, such as:
        a. *False or Misleading.* A drug is misbranded if its labeling is "false or misleading in any particular."21 U.S.C. § 352(a).
        b. *Prominence.* A drug is misbranded if required information is not prominently placed with such conspicuousness and in such terms as to make it likely to be read and understand by an ordinary individual. 21 U.S.C. § 352©.
        c. *Truth in Advertising*. A prescription drug is misbranded if its advertising does not provide a "true statement" with respect to side effects, contraindications, or effectiveness. 21 U.S.C. § 352(n). Advertising cannot be "false, lacking in fair balance, or otherwise misleading." 21 C.F.R.. § 202.1(e).
    2) It will be deemed if, for example, it:
        a. Contains a representation or suggestion, not approved for use in the labeling,

that the drug is better, safer, more effective, or effective in a broader range of conditions than demonstrated by substantial evidence. 21 C.F.R.. § 202.1(e)(6)(I);

b. Contains an unsupported comparative claim or superiority claim. 21 C.F.R.. § 202.1(e)(6)(I) and (ii)

c. Contains unsupported favorable information or opinions; 21 C.F.R.. § 202.1(e)(6)(iii);

d. Selectively presents favorable information on safety or side effects. 4521 C.F.R.. § 202.1(e)(6)(iv);

e. Suggests that study information has more general application. 4621 C.F.R.. § 202.1(e)(6)(v)

f. Uses literature references that do not support the claim in question. 4721 C.F.R.. § 202.1(e)(6)(vi)

g. Uses data that have no clinical significance. 4821 C.F.R.. § 202.1(e)(6)(vii)

h. Uses statements from authorities out of context, or ignoring negative or inconsistent views. 4921 C.F.R.. § 202.1(e)(6)(viii)-(ix);

i. Uses literature, quotations, or references to recommend or suggest an unapproved indication or to inaccurately support an approved indication. 21 C.F.R.. § 202.1(e)(6)(x)-(xi); or

j. Cites scientific studies that are defective in construction or contain criteria making them inapplicable to the sponsor's purpose. 5121 C.F.R.. § 202.1(e)(6)(xiii)-(xx).

38. As alleged herein, as a direct and proximate result of the Defendant's negligence and wrongful conduct, including violations of the federal regulations, and the unreasonably dangerous and defective characteristics of the subject product, the Plaintiffs suffered severe and permanent physical and emotional injuries.

39. Despite Defendant's longstanding knowledge of the danger of birth defects, Zoloft labels only warn about possible occurrence of PPHN if taken after the 20th week of pregnancy. Defendant failed, and continues to fail to warn and disclose to consumers that Zoloft significantly increases the risk of cardiac malformations and other birth defects. Furthermore, the proper and effective use of Zoloft by Terry Harold was impaired due to Defendant's failure to warn of Zoloft defects and Defendant's failure to properly and adequately set forth such warnings in Zoloft drug labeling.

40. Defendant knew of the dangerous birth defects associated with Zoloft use during pregnancy from the preclinical studies and the subsequent published studies confirming these risks. Defendant took no action to adequately warn or remedy the risks, but instead concealed, suppressed and failed to disclose the dangers. Even in the fact of the numerous published studies, Defendant failed to warn of these dangers through revised drug labeling.

## FIRST CAUSE OF ACTION – CONSTRUCTION OR COMPOSITION DEFECT UNDER LA. R.S. § 9:2800.55

41. Defendant designed, researched, developed, tested, inspected, produced, manufactured, analyzed, merchandised, packaged, advertised, promoted, labeled, distributed, marketed, and/or sold Zoloft in a condition which rendered in unreasonably dangerous due to its propensity to cause congenital injuries, defects, disorders and malformation. Zoloft was unreasonably dangerous in construction or composition as provided for in La. R.S. §9:2800.55.

42. Zoloft, manufactured and/or supplied by Defendant, was defective in construction and/or composition in that, when it left the hands of Defendant, it deviated in a material way from Defendant's manufacturing performance standards and/or it differed from otherwise identical products manufactured to the same design formula. In particular, Zoloft was constructed or composed in a way that allowed it to cross the placenta and cause congenital birth defects.

43. As a direct and proximate result of the use of Zoloft as designed, constructed, researched, developed, tested, inspected, produced, manufactured, analyzed, distributed, sold, supplied and introduced into the stream of commerce by Defendant, Plaintiffs suffered harm, damages and economic loss as previously described and will continue to suffer such harm, damages and economic loss in the future.

## SECOND CAUSE OF ACTION – DESIGN DEFECT UNDER LA. R.S. §9:2800.56

44.     Defendant designed, formulated, researched, developed, tested, inspected, produced, manufactured, analyzed, merchandised, packaged, advertised, promoted, labeled, distributed, marketed, sold, supplied and introduced Zoloft into the stream of commerce.

45.     Zoloft, manufactured and/or supplied by Defendant, was defective in design or formulation in that, when it left the hands of the Defendant, it did not conform to federal and/or state requirements, and the foreseeable risk of the product exceeded the benefits associated with its design or formulation, or it was more dangerous than an ordinary consumer would expect. In particular, the product was designed in a way that allowed it to cross the placenta and cause congenital birth defects. Zoloft was unreasonably dangerous in design as provided for in La. R.S. §9:2800.56.

46.     The foreseeable risks associated with the design or formulation of Zoloft includes, but are not limited to, the fact that the design or formulation is more dangerous than a reasonably prudent consumer would expect when used in an intended or reasonably foreseeable manner.

47.     As a direct and proximate result of the use of Zoloft as designed, formulated, researched, developed, tested, inspected, produced, manufactured, analyzed, distributed, sold, supplied and introduced into the stream of commerce by Defendant, Plaintiffs suffered harm, damages and economic loss as previously described and will continue to suffer such harm, damages and economic loss in the future.

**THIRD CAUSE OF ACTION – INADEQUATE WARNING UNDER LA. R.S. §9:2800.57**

48.     Zoloft, manufactured and/or supplied by Defendant, was defective due to inadequate warnings or instructions because Defendant failed to conform with federal and/or state requirements for labels, warnings, and instruction, and/or alternatively, Defendant knew or should have known, that the product created significant risks of serious bodily harm to consumers and Defendant failed to adequately warn consumers and/or their health care providers of such risks. Zoloft was unreasonably dangerous because an adequate warning was not provided as provided for in La. R.S. §9:2800.57.

49.     Zoloft, manufactured and supplied by defendant, was defective due to inadequate post-marketing warnings or instruction because, after Defendant knew or should have known of the risk of serious bodily harm from the use of Zoloft, Defendant failed to provide an adequate warning to consumers and/or their health care providers of the defects of the product, and/or alternatively failed to conform to federal and/or state requirements for labeling, warnings and instructions, or recall, while knowing that the product could cause serious injury.

50.     Zoloft, manufactured and supplied by defendant, was defective due to inadequate warnings or instructions as Defendant breached its duty of pharmaco-vigilance. Defendant has an ongoing duty of pharmaco-vigilance. As a part of this duty, Defendant is required to continually monitor, test, and analyze data regarding the safety, efficacy, and prescribing practices of its marketed drugs, including Zoloft. Defendant continually receives reports from its own clinical

trials, practicing physicians, individual patients and regulatory authorities of adverse events that occur in patients taking Zoloft and its other marketed drugs. Furthermore, Defendant continues to conduct clinical trial for its marketed drugs long after the drug is approved for use. Defendant has duty to inform doctors, regulatory agencies, and the public of new safety and efficacy information it learns or should have learned, about its marketed drugs as that information becomes available to Defendant, whether through Defendant clinical trials, other outside sources, or pharmaco-vigilance activities. Specifically, when Defendant learns, or should have learned, of new safety information associated with its marketing drugs, it has a duty to promptly disseminate that data to the public. Defendant also has a duty to monitor epidemiological and pharmaco-vigilance data regarding its marketed drugs and to promptly report any safety concerns that arise through epidemiological study or data. Defendant breached its duty with respect to Plaintiffs, as Defendant, through various sources, including but not limited to, clinical trial and other adverse event reports, learned that there was a substantial risk of birth defects, associated with Zoloft use during pregnancy and failed to inform doctors, regulatory agencies, and the public at risk. Defendant has and has had the means and the resources to perform its pharmaco-vigilance duties for the entire time Zoloft has been on the market in the United States.

51.     As a direct and proximate result of the use of Zoloft due to inadequate warnings or instructions, the Plaintiffs suffered harm, damages and economic loss as previously described and will continue to suffer such harm, damages and economic loss in the future.

## FOURTH CAUSE OF ACTION – BREACH OF EXPRESS WARRANTY UNDER LA. R.S. §9:2800.58

52.     Defendant expressly warranted to Plaintiffs that Zoloft was safe and fit for use by consumers and users for its intended purposes, that it was of merchantable quality, that it did not produce any dangerous side effects, and that it was adequately tested and fit for its intended use. In particular, Defendant claimed Zoloft was safe for use by women of child-bearing years and was not associated with congenital birth defects.

53.     At the time of the making of the express warranties, Defendant knew or should have known of the purpose for which Zoloft was to be used and warranted the same to be, in all respects, fit, safe and effective and proper for such purpose. Zoloft was unreasonably dangerous because it failed to conform to an expressed warranty of the Defendant as provided for in La. R.S. §9:2800.58.

54.     At the time of the making of the express warranties, Defendant knew or should have known that, in fact, said representation and warranties were false, misleading, and untrue in that Zoloft was not safe ad fit for its intended use, and, in fact, produces serious injuries to the user.

55.     Terry Harold purchased and used Zoloft for its intended purpose.

56.     Defendant breached said express warranties in that Zoloft was not safe and fit for its

intended use, and in fact, cause debilitating side effects. In particular, the product crossed the placenta and caused congenital birth defects.

57.     As a direct and proximate result of Defendant's breech of express warranty, the Plaintiffs suffered harm, damages and economic loss as previously described and will continue to suffer such harm, damages and economic loss in the future.

## FIFTH CAUSE OF ACTION – REDHIBITION

58.     Zoloft contains a vice or defect which renders it useless or its use so inconvenient that buyers would not have purchased it.

59.     Defendant sold and promoted Zoloft, which Defendant placed into the stream of commerce. Under Louisiana law, the seller warrants the buyer against redhibitory defects, or vices, in the thing sold. La. C.C. art.2520. Zoloft which was sold and promoted by the Defendant, possesses a redhibitory defect because it was not manufactured and marketed in accordance with industry standards and/or is reasonably dangerous, as described above, which renders Zoloft useless or so inconvenient that it must be presumed that a buyer would not have bought Zoloft had she known of the defects. Pursuant to La. C.C. art. 2520, the Plaintiffs are entitled to obtain a recision of the sale of Zoloft.

60.     Zoloft alternatively possesses a redhibitory defect because Zoloft was not manufactured

and marketed in accordance with industry standards and/or is unreasonably dangerous, as described above, which diminishes the value of Zoloft so that it must be presumed that a buyer would still have bought it but for a lesser price. In this instance, Plaintiffs are entitled to reduction of the purchase price.

61. Defendant is liable as a bad faith seller for selling a defective product with knowledge of the defect and thus is liable to Plaintiffs for the price of Zoloft, with interest from the purchase date, as well as reasonable expenses occasioned by the sale of Zoloft, and attorneys' fees. As the manufacturer of Zoloft, under Louisiana law, Defendant is deemed to know that Zoloft possessed a redhibitory defect. La. C.C. art. 2545.

62. Plaintiffs repeat, reiterate and re-allege each and every allegation of this complaint contained in Paragraphs 1-47, with the same force and effect as if fully set forth herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Terry Harold, individually and on behalf of her minor child, Letoria Harold, demand judgement against Defendant on all causes of Action herein for such damages as are reasonably in the premises, together with the maximum legal interest, and for all costs as follows:

1. Awarding actual damages to Plaintiffs, incident to Terry Harold's purchase and use of Zoloft, in an amount to be determined at trial;

2. Awarding actual damages to Plaintiff Terry Harold for her damages;

3. Awarding actual damages to Plaintiff Terry Harold, on behalf of the minor, Letoria Harold for the minor's damages, including medical monitoring;

4. Awarding pre-judgement and post-judgement interest to Plaintiffs;

5. Awarding the costs and the expenses of this litigation to the Plaintiffs;

6. Awarding reasonable attorney's fees and costs to Plaintiffs as provided by law;

7. Awarding interest on such award of attorney's fees and costs; and

8. Granting all such relief as the Court deems necessary, just and proper.

### JURY DEMAND

Plaintiff Terry Harold, individually and on behalf of her minor child Letoria Harold demands a trial by jury on all issues.

Date: August 16, 2012                           Respectfully submitted:

Michael Hingle & Associates, LLC


By:   /s/ Michael Hingle
Michael Hingle, #6943
Bryan A. Pfleeger, #23896
Ronald J. Favre, #5479
220 Gause Boulevard
Post Office Box 1129
Slidell, Louisiana 70459
Telephone: (985) 641-6800
Fax: (985) 646-1471

***Attorneys for Plaintiffs***